# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MARY ELLEN HUNTER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 2:14-cv-00001** |
| **v.** | ) | **Judge Sharp** |
| | ) | |
| **CAROLYN W. COLVIN** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 14). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance under Title II and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). Upon review of the administrative record as a whole and consideration of the parties' filings, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be granted.

## I. INTRODUCTION

Plaintiff, Mary Ellen Hunter, filed a Title II application for disability insurance and a Title XVI application for SSI on November 15, 2010, alleging disability as of November 1, 2010. Plaintiff's claims were denied at the initial level on April 27, 2011, and on reconsideration on August 12, 2011. (Tr. 62-66, 68-73). Plaintiff requested a hearing before an administrative law judge

("ALJ"), which was held on July 30, 2012. (Tr. 12, 27, 76). On September 12, 2102, the ALJ issued

a decision finding that Plaintiff was not disabled. (Tr. 9-26). Plaintiff timely filed an appeal with

the Appeals Council, which issued a written notice of denial on December 18, 2013. (Tr. 1-6). This

civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. ALJ FINDINGS

The ALJ issued an unfavorable decision on September 12, 2012. (AR p. 9). Based upon the

record, the ALJ made the following enumerated findings:

1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2.     The claimant has not engaged in substantial gainful activity since November 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.     The claimant has the following severe impairments: obesity, diabetes, degenerative disc disease of the lumbar spine, depression, asthma, and sleep apnea (20 CFR 404.1520(c) and 416.920(c).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant would be limited to frequent climbing, balancing, stopping, kneeling, crouching, and crawling. The claimant should avoid exposure to smoke, temperature extremes, and exposure to dangerous machinery and unprotected heights. However, the claimant can sit up to 8 hours in an 8-hour workday, no more than 1hour at a time and stand or walk up to 4 hours in an 8-hour workday. The claimant should not be required to perform constant gripping with either hand or perform jobs with repetitive movements. Additionally, the claimant is capable of understanding and remembering simple instructions as well as maintaining persistence and pace for 2- hour periods.   The claimant is able to interact with others appropriately.

6.     The claimant is capable of performing past relevant work as an assistant manager at check cashing company and an assistant teacher. This work does not

require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 1, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(AR pp.14 -20).

## III. REVIEW OF THE RECORD

The following summary of the evidence of record is taken from Plaintiff's brief, Docket

Entry No. 15 at pp. 2-5:

Mary Hunter was 40 years old when she applied for these benefits. She lives in Cookeville, Tennessee with her husband David, an electrician, and is the mother of an adult daughter. [TR 36] She attained nine years of formal schooling and completed a G.E.D. In 1992 she became a certified nursing assistant and worked, "off and on" in this field until she became disabled in September 2010. She performed similar tasks as a CNA while working at Pacesetters, a local program that provided services for mentally challenged adults and as a special education teacher assistant at a local high school. [TR 611] Between October 2007 and March 2008 she worked briefly as an assistant manager at a check cashing store. [TR 179] Dr. Julian Nadolsky, a vocational expert, testified that her work as an assistant manager was light and semi-skilled, and that her work as a CNA, including her work at Pacesetters as a teacher assistant, was medium and semi-skilled. [TR 58]

Mary Hunter suffers from diabetes, back pain and severe breathing impairments. She is also morbidly obese, a complex disease that exacerbates her other impairments. On August 5, 2008, Dr. David Henson administered a complete polysomogram on this patient. At the time, she was 5'2" tall and weighed 249 pounds, with a BMI of 45.54. This sleep study was done to quantify the possibility of a sleep disorder, and it revealed obstructive sleep apnea, hypoxema and periodic limb movement disorder. [TR 300-301]

On February 23, 2009 Ms. Hunter was seen at the Cancer Center at Cookeville Regional Medical Center after undergoing a thyroidectomy for a small nidus of papillary carcinoma. [TR 401]

On November 29, 2010 Ms. Hunter had an MRI scan of her lumbar spine. The lumbar vertebral bodies were normal in height and in anatomic alignment. There was narrowing of the disc space and disc desiccation at L3-4 and L5-S1. There was a prominent annular bulge at L5-S1. There was also ventral thecal sac compression at

L5-S1 and a small central disc herniation was present. There was no lateralizing nerve root compression. The diagnostic impression was degenerative disc disease. [TR 428] Ms. Hunter made several visits to the emergency room in 2010. On January 1, 2010 she was admitted as a walk-in to the ER, and had a chest x-ray. [TR 482] This procedure was repeated on June 7, 2010 [TR 475] , and on November 1, 2010. [TR 440] These impressions revealed remote healed granulomatous disease. This disease was chronically in plain tissue, usually caused by an infection.

On January 31, 2011 Ms. Hunter was evaluated by Dr. Donita Keown, a contract physician with the Tennessee Disability Determination Section. Ms. Hunter complained of a past history of non-insulin diabetes mellitus, and stated that her blood sugar was moderately controlled by Metformin. There was no evidence of retinopathy, renal impairment, nor neuropathy of diabetic foot ulcers. Ms. Hunter also complained of back pain and Dr. Keown reported degenerative changes to her lumbar spine. She was also 100 pounds overweight. She utilized BiPap to manage her sleep apnea. She complained of arthritis in her hands, along with carpal tunnel syndrome, which caused her hands to feel pain and weakness. [TR 617] Dr. Keown's diagnosis included obstructive sleep apnea, tobacco dependence, asthma, surgical hypothyroidism, and uncomplicated diabetes mellitus. [TR 619] Dr. Keown believed that Ms. Hunter could continuously lift up to 10 pounds and 20 pounds, and frequently lift between 20 and 100 pounds. She also believed Ms. Hunter could occasionally carry between 50 and 100 pounds. [TR 621]

Dr. Vicki Kalen, a state agency medical doctor, evaluated Ms. Hunter's medical evidence on April 25, 2011, and essentially [agreed with] Dr. Keown's findings and conclusions. She believed that Ms. Hunter could occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand with normal breaks for about 6 hours a day, sit with normal breaks about 6 hours a day, and could push and pull, including operation of hand and foot controls, unlimited amounts of time. [TR 646]

On December 16, 2010 Ms. Hunter began a physician-patient relationship with Karen Joyce, A.N.P. [TR 658] Ms. Joyce saw Ms. Hunter on March 11, 2011, [TR 660] March 18, 2011 [TR 663], June 2, 2011 [TR 672] and June 11, 2012 [TR 703] Ms. Joyce treated Ms. Hunter for Type II diabetes, degenerative disc disease of the cervical and lumbar spine, asthma, esophageal reflux disease, post-surgical hypothyroidism, hyperlipidemia and depression. [TR 653]

Ms. Joyce completed a medical source statement on June 11, 2012, and concluded that Mary Hunter could lift less than 10 pounds rarely, and never lift 20 to 50 pounds. She could never twist, stoop, bend, crouch, climb ladders, or climb stairs. [TR 701] She also believed that her patient could sit, stand and walk less than 2 hours a day, and would need a job that permits shifting positions at will from sitting, standing and walking. [TR 702] Dr. Bernadette Hee, a pulmonary medicine specialist in Cookeville, saw Ms. Hunter for the first time on October 24, 2011 for complaints

of asthma. She complained of chest tightness, which was longstanding, but had more trouble in the last year. The condition is worsened by overheating and being outdoors, and sometimes triggered by walking distances or laughing. Symptoms were modified by sitting and resting and modified by Albuterol. [TR 697] Dr. Hee ordered a series of clinical and diagnostic test and on November 9, 2011 had an echo-cardiogram. The impression was a grossly normal trans-thoracic echo-cardiogram, with no change from the patient's prior study dated October 27, 2011. [TR 711] Dr. Hee also ordered breathing tests which revealed a 4% oxygen de-saturation index, 4% total event with cumulative duration mean onset Spo2 of 97.61. [TR 714] Dr. Hee saw Ms. Hunter on December 5, 2011, and FEV1 testing recorded a score of 1.99, FVC testing of 2.63, and TLC of 5.18. These values indicated early onset airway defect, more suggestive of asthma. [TR 694-696] She also saw Ms. Hunter on January 30, 2012 [TR 690] and June 4, 2012 [TR 685] On July 19, 2010, Dr. Hee completed a pulmonary residual functional capacity questionnaire restricting her from lifting up to 10 pounds, and indicating she was unable to stoop, crouch, climb ladders or stairs. [TR 683-84] She also stated that Ms. Hunter had an upper respiratory infection, shortness of breath, episodic acute asthma, episodic acute bronchitis and significant dyspnea. [TR 682]

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's

decision must be affirmed if it is supported by substantial evidence, "'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir.1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

### B. Determining Disability at the Administrative Level

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 CFR §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other

relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 CFR §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 CFR §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 CFR §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra; Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs, supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can

still do despite [her] limitations." 20 CFR § 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir.1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs, supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th

Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 CFR § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. Plaintiff's Assertion of Error**

Plaintiff argues that (1) the ALJ improperly rejected the opinion of Dr. Bernadette Hee, Plaintiff's treating specialist; (2) the ALJ failed to consider properly Plaintiff's obesity, as required under Social Security Ruling 02-01p; and (3) the ALJ's finding that Plaintiff can perform light work is not supported by substantial evidence. (Docket Entry No. 15 at 6). Plaintiff contends that the Commissioner's decision should be reversed and remanded. *Id*. at 6, 13.

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Additionally, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d

171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertion of error is addressed below.

*1. The ALJ improperly rejected the opinion of Dr. Bernadette Hee, Plaintiff's treating specialist.*

Plaintiff contends that the ALJ erred in giving "no weight" to the opinion of Dr. Bernadette Hee, one of Plaintiff's treating physicians, and instead improperly afforded significant weight to the opinion of Dr. Vicki Kalen, a consulting physician. (Docket Entry No. 15 at 6, 8). In response, Defendant contends that the ALJ properly considered and evaluated Dr. Hee's opinion. (Docket Entry No. 16 at 4). Defendant concedes that the ALJ's statement that Dr. Hee's limitations were too restrictive given Plaintiff's ability to perform chores around the home and cook "is admittedly a brief analysis," but argues that this statement "must be viewed in conjunction with the longer summary of Dr. Hee's treatment" in the ALJ's opinion. *Id.* at 5.

Social Security regulations address three classifications of medical sources: treating sources; examining but non-treating sources; and non-examining sources. 20 C.F.R. §§ 404.1527, 416.927; 20 C.F.R. §§ 404.1502, 416.902. A treating source has a history of medical treatment and an ongoing treatment relationship with the plaintiff consistent with accepted medical practice. 20 C.F.R. §§ 404.1502, 416.902. An examining non-treating source has examined the plaintiff, but does not have an ongoing treatment relationship. *Id.* A non-examining source is a physician, psychologist, or other acceptable medical source who has not examined the plaintiff, but provides a medical or other opinion based upon medical and treatment records. *Id.*

The opinion of an examining non-treating source is given greater weight than that from a non-examining source and an opinion from a treating source is afforded greater weight than an examining non-treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013)

(citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (2)). Thus, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Id.* at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). "Moreover, when the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527([c])(5)).

The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009) (quoting SSR 96–2p, 1996 WL 374188, at *5). The Sixth Circuit has explained that "a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007). If the ALJ does not accord the treating physician's opinion "controlling weight," then the ALJ must weigh the opinion based on a number of factors, including: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406. "However, in all cases there

remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing SSR 96-2p, 1996 WL 374188, at *4).

The ALJ's conclusion regarding Plaintiff's RFC was based upon the following:

The claimant testified at the hearing that she was 5'2" and that she weighs [268] pounds. She noted that her weight fluctuates, depending on her thyroid. The claimant reported that she stopped working because she had problems lifting due to back pain. She noted that physical therapy worsened her symptoms and noted that she is not able to take many pain pills due to being allergic to some medications. According to the claimant, she also has problems with her sugars running high, which causes problems with her vision and neuropathy in her feet and hands. The claimant stated that she had not had her eyes check in over two years. She further noted that she has asthma, for which she uses a nebulizer and sleep apnea, for which she uses a CPAP machine. The claimant reported that she takes medications for depression and anxiety, which help. According to the claimant, she is able to perform some household chores, but noted that her husband does most of the chores. The claimant reported that she spends most of her day reading and watching television. She indicated that she can sit about 30 minutes at a time and stand about 45 minutes. The claimant replied that she has not tried to lift more than 10 pounds.

The medical evidence of record reveals that the claimant has a history of diabetes. Carolyn Ross, DO saw the claimant in April 2010 for follow-up of her type II diabetes mellitus. It was noted that the claimant was morbidly obese, with a recorded weight of 253 pounds. Dr. Ross indicated that the claimant may be a candidate for gastric bypass. The claimant was counseled on diet and exercise. The claimant denied any endocrinology problems (Exhibit 3F).

Additional records reveal that Karen Joyce, ARPN saw the claimant throughout 2010 for continued treatment of her diabetes. The claimant was treated for complaints of dizzy spells, morning shakes, and occasional diarrhea. Treatment records in October 2010 reveal that the claimant also noted problems with fatigue, anxiety, and smothering spells at night, as well as depression. According to the claimant, she was not taking her thyroid medications because she was not able to afford them. She was assessed with asthma and an adjustment disorder with depressed mood. The claimant underwent medication adjustments and was prescribed medications for asthma and depression. However, Ms. Joyce indicated that the claimant was having good control of her diabetes. The claimant also underwent a polysomnogram on November 22, 2010, which revealed obstructive sleep apnea (moderate). With complaints of back pain, the claimant underwent a magnetic resonance imaging (MRI) scan of the lumbar spine on November 29, 2010, which revealed degenerative

disc disease at the L5-Sl level with small central disc herniation and mild degenerative disc disease at L3-4. The claimant was advised to lose weight and to quit smoking (Exhibits 4F and 5F).

In a follow-up visit with Ms. Joyce in December 2010, the claimant reported some improvement in her depressive symptoms and that she was doing well on her medications. She was continued on her medication regimen (Exhibit 14F).

The claimant underwent a consultative psychological evaluation on January 28, 2011, performed by Jeffrey Scott Herman, SPE. According to the examiner, the claimant walked slowly, but noted that she did not appear to be in acute distress. It was noted that the claimant reported a history of asthma, diabetes, and thyroid problems. According to the claimant, she takes medication for depression. However, she denied receiving any recent mental health treatment. It was noted that the claimant reported that she is able to perform some household chores, but that her husband helps with most chores. She noted that she is able to cook on "good days" and that she stays in bed on "bad days." The claimant reported experiencing off and on panic attacks, but indicated that they may be related to difficulty breathing. Mr. Herman indicated that the claimant was overweight. It was noted that the claimant had some difficulty with concentration but that her memory was intact. The claimant was assessed with major depressive disorder, recurrent, moderate; moderately overweight, asthma, diabetes, arthritis, degenerative disc disease, unspecified knee problems, hypothyroidism, previous thyroid cancer; and a global assessment of functioning (GAF) of 52. A GAF of 52 is indicative of an individual with moderate symptoms or moderate difficulty in social, occupational or school functioning. Mr. Herman indicated that the claimant was capable of understanding and remembering simple and detailed instructions and maintaining persistence. It was felt that the claimant had some difficulty with concentration. However, Mr. Herman indicated that the claimant's depressive symptoms should not interfere with her ability to sustain employment (Exhibit 8F).

The claimant underwent a consultative examination on January 31, 2011, performed by Donita Keown, M.D. Dr. Keown noted that the claimant reported experiencing intermittent back pain for several years. It was noted that the claimant was 100 pounds overweight, at 242 pounds. According to the examiner, the claimant also reported that she suffers from diabetes mellitus, which is controlled with medications. It was noted that the claimant admitted to smoking 1/2 pack of cigarettes per day. The examiner noted that the claimant had no difficulty walking and that she required no assistive device. Further examination indicated that the claimant had full range of motion of her hips, knees, and ankles, as well as the shoulder joints, wrists, and hands. It was noted that the claimant had a history of thyroid cancer, which was stable. The claimant was assessed with non-insulin dependent diabetes mellitus, uncomplicated; chronic low back complaints; carpal tunnel syndrome, by history, but no physical evidence; history of hypothyroidism;

history of asthma, stable; tobacco dependence; and obstructive sleep apnea. Dr. Keown noted that a MRI performed on November 29, 2010 showed L5-S1 degenerative disc disease, but no evidence on physical examination. It was her opinion that the claimant had the ability to frequently lift up to 100 pounds and carry up to 50 pounds frequently and 100 pounds occasionally, as well as sit, stand and walk up to 8 hours in an 8-hour workday. She noted that the claimant could use her feet and hands on a continuous basis, as well as climb and balance. However, it was felt that the claimant would be limited to frequent stopping, kneeling, crouching, and crawling (Exhibit 9F).

Bernadette Hee, M.D. saw the claimant in 2011 and 2012 for evaluation of her asthma symptoms. Dr. Hee noted in several visits in 2011, that the claimant reported problems with chest tightness, shortness of breath and some daytime somnolence. It was further noted that the claimant was had a history of a thyroidectomy and asthma symptoms. Dr. Hee indicated that the claimant's chest x-ray showed no acute pulmonary abnormalities. The claimant was assessed with obstructive sleep apnea and asthma exacerbation. It was noted that the claimant was continued on medications and was treated with a Bipap. According to the claimant, she had difficulty tolerating the device due to claustrophobia. Although the claimant also reported some increased anxiety, Dr. Hee indicated that the claimant's judgment, insight, and mood were intact and normal. In a follow-up visit in June 2012, the claimant reported only occasional chest discomfort and denied any lower extremity edema. The provider also noted that the claimant had lost 12 pounds since her visit in January 2012, with a recorded weight of 271 pounds. It was noted that the claimant reported that she was not interested in gastric bypass surgery. Dr. Hee also completed a Pulmonary Residual Functional Capacity Questionnaire of the claimant. She indicated that the claimant had diagnoses of asthma and obstructive sleep apnea, with symptoms of shortness of breath, chest tightness, wheezing, rhonchi, episodic acute asthma, episodic acute bronchitis, and coughing. It was indicated that exercise, allergens, upper respiratory infection, emotional upset/stress, irritants, and cold air/weather changes exacerbated the claimant's symptoms. Dr. Hee noted that the claimant averaged attacks every three months. It was felt that the claimant's symptoms would frequently interfere with attention and concentration, and that she was incapable of even "low stress" jobs. Dr. Hee further opined that the claimant had the ability to sit, stand and walk less than 2 hours in an 8-hour workday and perform no lifting and carrying, as well as never stoop, crouch, climb ladders, or climb stairs, but that she could occasionally twist. It was indicated that the claimant should avoid all exposure to temperature extremes, humidity, wetness, smoke, respiratory irritants, dust, or chemicals. The provider felt that the claimant would likely be absent from work more than four days per month (Exhibits 19F and 21F).

Ms. Joyce also completed a Physical Residual Functional Capacity Questionnaire of the claimant on June 11, 2012. She opined that the claimant had the ability to rarely lift and carry less than 10 pounds, as well as sit, stand and walk less than 2 hours in

an 8-hour workday. Ms. Joyce noted that the claimant experienced back pain with lower extremity weakness, tingling, and numbness due to peripheral neuropathy. She indicated that the claimant was incapable of even "low stress" jobs due to her depressive symptoms and that the claimant would likely be absent from work more than four days per month (Exhibit 20F).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged musculoskeletal symptoms, diabetes, asthma, and sleep apnea, the medical evidence fails to support a finding that the claimant is significantly limited in her ability to perform some type of work activity or activities of daily living. Although the claimant is overweight, she has not reported problems in getting around due to size and has not reported the use of a cane or other assistive device. During a consultative examination in January 2011, Dr. Keown also noted that the claimant had no difficulty walking (Exhibit 9F). The claimant reported that she is able to perform some household chores and indicated that she spends most of her day reading and watching television. There is no indication that the claimant has any difficulty with caring for her personal needs. Despite the claimant's back pain, objective findings reveal only mild degenerative changes. There is no indication that any of the claimant's treating providers have suggested any surgical intervention. The records does not show that the claimant has required any hospitalizations for any asthma exacerbations or diabetic complications. According to the claimant, medications help with anxiety and depression. Additionally, the claimant has not had any recent mental health treatment.

As for the opinion evidence, significant weight is given to the opinion of the consultative examiner, Dr. Keown, who indicated that the claimant showed no physical evidence of lumbar spine degenerative disc disease on examination. It was her opinion that the claimant had the ability to frequently lift up to 100 pounds and carry up to 50 pounds frequently and 100 pounds occasionally, as well as sit, stand and walk up to 8 hours in an 8-hour workday. She noted that the claimant could use her feet and hands on a continuous basis, as well as climb and balance. However, it was felt that the claimant would be limited to frequent stooping, kneeling, crouching, and crawling (Exhibit 9F). Significant weight is also given to the opinion of the State agency medical consultant, Dr. Kalen, who indicated that the claimant had the ability to frequently climb, balance, stoop, kneel, crouch and crawl. The examiner further noted that the claimant's diabetes and asthma were well controlled with medications (Exhibit 12F). However, the undersigned gives the claimant the benefit of the doubt and finds that she would be limited to light work activity, with lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently.

No weight is given to the opinions of Drs. Hee and Ms. Joyce, as they indicated that the claimant was unable to sit, stand or walk even 2 hours in an 8-hour workday and that she had the ability lift and carry 10 pounds or less on a regular basis. They both noted that the claimant would also likely be absent from work more than four days per month due to her symptoms (Exhibits 19F and 20F). The undersigned finds these limitations to be too restrictive, particularly, since the claimant indicated that she is able to perform chores around home and cook.

Significant weight is given to the opinion of the State agency psychological consultant, who indicated that the claimant was not significantly limited in most areas of functioning. The examiner further noted that the claimant was able to understand and remember simple and detailed instructions, maintain attention and concentration for two-hour periods; interact appropriately with others; and adapt to change (Exhibit 1lF). Significant weight is also given to the assessment of the consultative examiner, Mr. Herman, who also noted that the claimant was capable of understanding and remembering simple and detailed instructions as well as maintaining persistence. Mr. Herman opined that the claimant's depressive symptoms should not interfere with her ability to sustain employment (Exhibit 8F).

In sum, the above residual functional capacity assessment is supported by the claimant's ability to care for her personal needs, get around without difficulty, and perform some household chores. There is no indication that the claimant requires any assistive device to get around. The claimant is able to get along adequately with others and adapt to infrequent change in the workplace.

(AR pp. 16-20).

The opinion of Dr. Hee, a treating specialist who saw Plaintiff several times from October 24, 2011 to June 4, 2012, is entitled to controlling weight unless Dr. Hee's opinion is not supported by "medically acceptable clinical and laboratory diagnostic techniques" or is inconsistent with the other substantial evidence in the record. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d at 376. Even if Dr. Hee's opinion is not entitled to controlling weight, there remains a rebuttable presumption that it is entitled to great deference and a requirement that good reasons be given if the opinion is discounted. *Rogers*, 486 F.3d at 242; 20 C.F.R. § 404.1527(c)(2). Here, the ALJ did not give good reasons for giving *no weight* to Dr. Hee's assessment of Plaintiff's limitations as the ALJ failed to provide sufficiently specific reasons for discounting Dr. Hee's opinion. The ALJ merely states that

Dr. Hee's limitations are too restrictive, "particularly, since the claimant indicated that she is able to perform chores around home and cook."  (AR p. 20).  Defendant asserts that the ALJ also "noted Plaintiff's activities such as watching television and sitting" and that "Plaintiff admitted to the consulting psychologist that she could cook on good days and could do some household chores."  (Docket Entry No. 16 at 5).  The consulting psychologist noted that Plaintiff will fix breakfast; that on a good day she will try to do laundry; that on a very good day she might run a vacuum; that her husband does most of the housework because she cannot vacuum due to pain in her left side most days; and that her husband does most of the grocery shopping, but that on a good day she will go with him.  (Tr. 609).

Yet, the ALJ fails to show how Plaintiff doing minimal chores undermines Dr. Hee's opinion.  "The key question is whether Plaintiff is able to engage in employment on a 'regular and continuing basis.'"  *Meece v. Barnhart*, 192 F. App'x 456, 466 (6th Cir. 2006) (quoting 20 C.F.R. § 404.1545(b)); *see id.* (" In the instant case, Plaintiff does not allege that he suffers from a disabling level of pain at all times that prevents him from participating in any activities, nor must he so allege in order to qualify for disability benefits."); *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir.1967) ("The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant.").

Defendant also argues that the "ALJ focused on other inconsistencies, including a lack of significant objective abnormalities during the examinations, such as Plaintiff's lack of abnormality in a chest x-ray and only occasional chest discomfort."  (Docket Entry No. 16 at 5).  However, the

ALJ does not cite specific inconsistencies between the medical evidence of Dr. Hee and that of Dr. Keown or any other corroborating medical evidence as bases for giving no weight to the opinion of Dr. Hee, a treating specialist. For example, the ALJ does not reference Dr. Hee's records that reflect that Plaintiff's pulmonary function tests showed "early sm airways defect," her DLCO was 70%, her FEF 25-75 was 60% and that Plaintiff's stress test showed a rating of "10" as to dyspnea and fatigue. (Tr. 678, 683, 685). The Court further notes that Dr. Kalen, a non-examining source, completed her assessment on April 25, 2011, before Dr. Hee began treating Plaintiff from October 2011 until July 2012. The Sixth Circuit requires "'some indication that the ALJ at least considered [ongoing treatment and notes by a plaintiff's treating sources] before giving greater weight to an opinion that is not based on a review of a complete case record.'" *Blakley*, 581 F.3d at 409 (quoting *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir.2007)) (citation and internal quotation marks omitted).

Thus, the Court finds that while there may be substantial evidence to support the ALJ, the ALJ failed to follow the procedural requirements of providing sufficiently specific reasons for discounting the opinion of a treating specialist in favor of a one time, examining non-treating source. *See Wilson*, 378 F.3d at 544 ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants . . . ."); *Gayheart*, 710 F.3d at 377 ("Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion."); *Blakley*, 581 F.3d at 410 ("[S]ubstantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527([c])(2) as harmless error.").

Therefore, the Court concludes that this action should be remanded for the ALJ's failure to articulate "good reasons" for giving no weight to a treating specialist's opinion. *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) ("We have stated that '[w]e do not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.'") (citations omitted); *Wilson*, 378 F.3d at 545 ("[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527([c])(2) requires.") *(citing Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

*2. The ALJ failed to consider properly Plaintiff's obesity under SSR 02-1p.*

Plaintiff asserts that the ALJ did not adequately evaluate Plaintiff's obesity or the effects of her obesity on her other physical conditions as required by SSR 02-1p. Social Security Ruling 02-1p describes how to consider a claimant's obesity in determining eligibility for Social Security benefits. Yet, "Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006).

The ALJ listed obesity as one of Plaintiff's severe impairments. (AR p. 14). The ALJ also stated that "[a]lthough the claimant is overweight, she has not reported problems getting around due to size and has not reported the use of a cane or assistive device," and noted Dr. Keown's observation that "claimant had no difficulty walking." *Id*. at 19; Tr. 614. Plaintiff does not cite any

limitations imposed by any medical provider based upon her obesity or to any evidence that supports more limitations based upon obesity. Upon consideration of the evidence, the Court concludes that the ALJ properly considered Plaintiff's obesity.

*3. The ALJ's finding that Plaintiff can perform light work is not supported by substantial evidence.*

Plaintiff argues that the ALJ erred in concluding that Plaintiff has the residual functional capacity to perform light work. Plaintiff argues the following:

> There is absolutely no source in the record that attests that Ms. Hunter can do light work. Instead, Dr. Keown believed that she could do heavy work, but the ALJ obviously didn't think much of that assessment. He afforded considerable weight to the opinion of Dr. Kalen, but she believed Ms. Hunter was capable of medium work. Both Dr. Hee and Ms. Karen Joyce, A.N.P. believed that Ms. Hunter could not perform the full range of sedentary work. So, the ALJ arrived at the position that Ms. Hunter could perform light work, "by giving her the benefit of the doubt." [TR 23]

(Docket Entry No. 15 at 12).

In light of the Court's conclusion to remand this action because the ALJ's RFC determination failed to comply with the treating physician rule, the Court declines to address this issue as the ALJ's re-evaluation and analysis on remand may impact the ALJ'S findings on this issue. *Jones v. Comm'r of Soc. Sec. Admin.*, No. 5:13-CV-02087, 2014 WL 4715727, at *12 (N.D. Ohio Sept. 22, 2014).

## V. CONCLUSION

In sum, the Court concludes (1) that the ALJ's RFC determination failed to comply with the treating physician rule and the good reasons requirement and this action should therefore be remanded; (2) that the ALJ properly considered Plaintiff's obesity; and (3) that given the Court's decision to remand this action the Court declines to address whether the ALJ's finding that Plaintiff can perform light work is not supported by substantial evidence.

For all of the reasons stated, the Court will grant Plaintiff's *Motion for Judgment on the Administrative Record* (Docket Entry No. 14).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE